Good morning, Your Honors. May it please the Court, Robert Swain for the Appellant, Mr. Pisa. I'd like to reserve two minutes for rebuttal. I plan to address the Sixth Amendment argument in the brief. One of the bedrock principles of the Sixth Amendment is that the defense counsel prepares, investigates, and communicates with the defendant. That's not what happened in this case. The defense counsel failed to find or even talk to recipient witnesses, one of which was listed in the police report with the address and phone number. And the trial judge tells us beyond a reasonable doubt the lawyer blew it. Well, the trial judge certainly had qualms about the trial counsel's performance, made several remarks about the deficiency in the opening statement, deficiency in the closing statement. And the four witnesses, five including the medical testimony that should have come in about the complaining witness's alcohol level, were easily obtainable. And because the jury didn't hear that evidence, the government's whole case, the complaining witness remained unimpeached and uncontradicted. For example, the witness who was listed in the police report, who was never contacted by defense counsel. I don't think there's any question about the performance itself. The trial judge said the opening statement gave him, quote, the distinct impression that his attorney doesn't have a clue about where he's going or what theory is or what the defense is or what the case is all about, and commented that the closing argument doesn't do much to dispel that initial impression, frankly. The real failure occurred before the trial started. It was a failure to adequately prepare for trial, adequately investigate. This is what the trial court says. I mean, it just blew this lawyer out of the water. So the question is whether there was prejudice. Right. Well, I'll turn to that. The state is disputing that the performance… Let's turn to prejudice, as the judge said. Can you tell us exactly what the doctor said the cause of the injuries could or could not be? The doctor said that the cause of the injury could have occurred from falling on a sharp object. He said it was also consistent with the complaining witness's version, which was that she was kicked. So that's why these witnesses, including the central witness, I think, which is Daripath, who was the witness listed in the police report and who defense counsel never even spoke to, that witness indicated that he carried the complaining witness into the house with no injury to her face after the altercation with Mr. Pisa and that he then heard a thump and he went into the bedroom where he had placed the complaining witness and saw the injury to her face. That testimony would also have been corroborated by Digivon, another witness who was found shortly after trial and who corroborated and saw the first witness, Daripath, carry the complaining witness to the bedroom, said she was very intoxicated, said there was no facial injury and heard the thump and then also saw the complaining witness bloodied in the face region. So this is central testimony and the state court's finding that the evidence was strong seems to me to be kind of circular reasoning. It was strong because it was unimpeached and there were no witnesses contradicting the complaining witness's version. The other witnesses specifically contradict, the missing witnesses specifically contradict the complaining witness on whether there was an altercation at the bar, whether she had fallen to the ground at the bar, how much she had to drink, whether she, and of course the central issue, when and how she received the injuries to her face. And so I'm asking this court to... The court largely, as I read the state court decision, it was largely based on the fact that it concluded the injuries could not have occurred the way these witnesses stated. They seem to read the doctor's testimony as precluding the acceptance of the witness's story. Well, that's simply wrong and I've quoted in my brief and on my tumor's rebuttal, I'll give the exact site, the doctor said on cross-examination, the injury could have occurred from falling on a sharp object. It was possible, but didn't Dr. Smith also say that he didn't think that it happened because this injury required direct force to the eyeball itself? Is his testimony in the excerpt? It is... I'd have to double check. I don't remember whether I put his... I don't think so. No, but his full testimony is not in the excerpt. I apologize for that. It's in some of the lodged exhibits. The excerpt is to your brief what the evidence in a trial is to your opening statement, and things like this are very important. We need that stuff in the excerpt. I understand. I'd be glad to supplement. His testimony may be critical here to the decision in the case and you didn't give it to us. Neither side did, I guess. The full testimony, that's correct. I did provide the quote in my statement of facts in the opening brief, the full quote and the site to that regarding his testimony. Trust but verify. And I don't think the State's position has been on appeal that the doctor said that it only could have happened the way the victim said, and they haven't claimed that it's impossible to have occurred by a fall on a sharp object. Well, you get into that old problem of anything is possible, counsel. How many times have you heard that in trial? Except for the fact this is a specific injury and the doctor was specifically asked. Now, the doctor said on direct it's inconsistent with simply a fall to the ground. But then on cross-examination, it was clarified and said it was possible for this type of injury, for a fall on a sharp object like a curb, like a corner of a table. Well, I guess one problem that I have is we are on habeas review. So what do we do with the Court of Appeals factual statement where he describes the doctor's testimony that the doctor testified the injuries were consistent with a kick to the face but not with the mere fall to the ground because such injuries would require direct force applied to the eyeball itself? Well, because that's completely wrong. It leaves out the cross-examination. It's not wrong. It's not complete. I apologize. It's not complete because the doctor specifically said then on cross-examination, yeah, it's not consistent with a mere fall to the ground, but a fall directly with a sharp object that the person falls on, it is consistent. So is there now an AEDPA standard that instead of just reviewing the findings of the Court of Appeals and in the absence of counsel providing us with the complete testimony that a reviewing appellate court, federal appellate court has to go back and dig through the district court records to make sure that the State Court of Appeals factual findings are complete? I don't think so. I don't think so under this Supreme Court, certainly. Certainly, but I... We have an obligation to review the entire state court record. I don't know whether that's still a rule, but... It's certainly... Remember we first had a case that said in order to reverse a state court... Is that post-AEDPA? No, but I don't think AEDPA has anything to do with what I... Under AEDPA, we defer to the factual findings of this last recent decision of the state court. But it certainly was... The question is what is our obligation about reading the record? It's in the record. The record, the full trial transcript has been lodged with the district court. It's in the record, and it's been cited by me to the full quote that I'm relying on. It shows that the state court's claim that it's not consistent with a mere fault is not a full... fully correct in that it omits the fact that the doctor said that it was consistent with a fall on a sharp object. And I put that in my opening brief. If the state hasn't suggested that that is not correct or it's not a part of the record. Well, I'd be interested to hear what the state has to say. Thank you, Your Honor. Good morning, Your Honors. May it please the Court? Nikki Schaefer appearing on behalf of Respondents and Appellees. Your Honors, first of all, to address the question about the record, the state would... in the state appellate court as well as the magistrate's report and recommendation and the district court's findings. And, in fact, that is the subject of this court's review. So... You would agree with what? I would agree that the excerpts of record are accurate and complete. They can't be complete. They're excerpts, so they're not complete. The question is, do you agree with your opponent's characterization of what the doctor's testimony was? No, Your Honor. I agree with the state court of appeals characterization. Well, the state court didn't say anything about the issue that counsel's talking about. It said it could come... It's consistent with the victim's story or the accuser's story. And it's not consistent with a mere fall to the ground. Is that all they said? No. Did the doctor say anything about is it consistent or inconsistent with not a mere fall to the ground, but a fall against a sharp object? Your Honor, a point of clarification. This victim suffered more than one injury. And, in fact, the doctor's testimony, as explained by the court of appeal opinion, maintained that, in fact, the injury to the eye could have been caused by a fall directly on a sharp object injuring the eyeball. However, that fall would not have accounted for the victim's other severe injuries in this case. Did the doctor say that? Yes. It would not account for the sum of the injuries. Your Honor, I believe that is said by the doctor. When was the last time you read the doctor's testimony? This morning. Why don't we have it in our excerpt? Your Honor, it is not my burden to provide that to the court. It is with the district court. Thank you very much. But if the court desires to see it, I'll be happy to provide it. Would you do that? Do you have it with you today? Do you have it with you? I do. After we have the arguments over, could you get a copy made for us? Sure, Your Honor. I'll be happy to do that. Thank you. Okay, good. Now. No worries. I'll be happy to do that, Your Honor, but I continue to assert it is not necessary and nor should this court even engage in that kind of review because, in fact, this court is reviewing it. You mean we shouldn't read the record? That isn't the record that is the subject of this court's review. You're reviewing the district court's order, which is to determination. Oh, well, that makes our job a lot easier now. We don't ever have to look at what the state court did. You are looking at what the state court did, Your Honor, by reading the Court of Appeals' opinion. I see. All right. That is what the state court did. And, in fact. Whatever they said is right. That's for you to determine, Your Honor, however. Without knowing what really went on. Your Honor, that's an inference that the state court would falsify what was presented to it. No, no, no. Maybe a state court would make a mistake. Is that possible? Your Honor, it's certainly possible for any court to make a mistake. However, none was made in this case. And as the court shall determine when it, you know, sees the record. I do have it here. I will make arrangements for the court to have it. However, I did not provide that to the court because I do not feel that this court needs to review that. In fact, this court is to presume that the state court got it correct and only review under ADEPA if anything is contrary to. Well, your opponent says where the state court did is contrary to the facts in the record. Well, then perhaps you should have provided the record, Your Honor. I did. No question. Well, then perhaps you can provide it to the court after we're done here. But I'll be happy to do it if the court is ordering me to do so. Well, we won't order you to. I mean, we don't want to put you out of your way. I just don't know where the facilities are, Your Honor. Well, I don't think you'll be able to find the facilities. We'll get it from your opponent. Okay, Your Honor. We'll talk about it afterwards. And one or the other of us will make sure you have what you're wanting to look at. But I will say, Your Honor, that this victim suffered multiple severe injuries. And the subject of the new declarations provided in support of the motion for new trial would have only accounted for the one particular injury to her eyeball. And there was never any dispute that this victim was seriously injured in multiple ways that only the testimony of the victim accounted for. The defendant punched her in the face. He pushed her to the ground. Then, as he was trying to be restrained from a friend, he broke away, ran back across the street, and kicked her directly in the eye, which resulted in the most severe injury to the victim, necessitating surgery in this case. But I will say, Your Honor, that Petitioner has failed to demonstrate how he was prejudiced by the omission of the testimony of any of these witnesses. None of the evidence ---- That was really the legal conclusion of the state court that we're looking at to see whether it's objectively unreasonable. It's the prejudice analysis, right? Yes, Your Honor, that's correct. And, in fact, it would be almost impossible to conclude that it was unreasonable in this case. The victim's testimony, contrary to what Mr. Swain presented earlier, the victim's testimony was discredited by the district attorney himself in closing argument. The victim testified that she only had two beers. However, the evidence established that her blood alcohol in the hospital was a .19. So the DA, during closing argument, told the jury, Look, we all know she's lying. We all know she was drunk that night. She obviously had more than two beers with a .19. However, the injuries speak for themselves. So, in other words, the victim was impeached by her own statements on cross-examination. Let me ask you this question. If there were no testimony by a doctor in this case, and you simply had the victim's testimony and these witnesses who testified the injury happened in another way, wouldn't there at least have to be an evidentiary hearing? No, Your Honor. Why not? The testimony of a single witness would be sufficient to support this judgment. Of course it would be sufficient. I'm not talking about sufficiency of the evidence. I'm saying if you had the victim who came in and said, This is what happened to me. You had a lawyer who didn't investigate. And we're assuming for the moment that there's ineffective performance. And then to show prejudice. The other side comes in and says, Here are two witnesses who will testify the injury happened in another way. Well, Your Honor, in fact, there was a defense witness who testified in this case. And his testimony was not significantly different from what the proposed new witnesses would have testified. Did he testify she fell on a nightstand? No, Your Honor, but neither did the new witnesses. The witness that concerns me is this therapist person. Okay, Your Honor. Who was apparently known or could have been easily found because that person was in the police report. Is that right? I believe so, Your Honor. And counsel never even talked to that person. We don't know that, Your Honor. We do not know that. Well, was the person called as a witness? No. And Darabath says that it appeared to him that she had fallen, striking her face on a nightstand next to the bed. Now, I suppose that if Darabath would have been interviewed or called, the questions to the doctor would have been well worth. Maybe not consistent with falling on the floor, but what about falling on this nightstand? Well, it appears. That's the part that's missing. Well, Your Honor, in fact, it appears from the record that defense counsel made a tactical decision. There is no statement or declaration from defense counsel, so we don't know what defenses he considered and rejected. But it appears that there were two choices available to him, either to allow the jury to infer that this victim suffered her severe injuries in the bar fight before returning back to the defendant's house, or to follow up on this theory that she fell back at the house and hit her head on a nightstand or another piece of furniture. In fact, he doubtless made a tactical decision to go with the witness he did use, because that witness stated he saw the woman down on the ground being kicked during this bar fight, and that could have well accounted for the multiple and serious injuries she did present at the hospital with. So this witness stated, that did actually testify, stated that he did not see her face after the bar fight. If he didn't interview the other witnesses, he couldn't have made a very intelligent choice. Well, we don't know that he did not, Your Honor. So maybe you need an evidentiary hearing. We don't know. We have allegations. Well, I'm assuming that he was deficient. I'm just concerned about the prejudice issue, which is how the state court analyzed it. Well, I don't believe the state court made a finding that he was deficient, Your Honor. But if this court … The state court leaped over that and just discussed prejudice. Well, Your Honor, even assuming that he was deficient, there certainly was no prejudice in this case, because the strongest defense possible was presented. The strongest defense possible was allowing the jury to infer that this woman was beat up severely during a crowded bar fight. That argument might possibly have counted for all the injuries that this victim suffered. Falling from the bed stand and hitting her head on an unspecified piece of furniture would not have accounted for how severely injured she was. So therefore, the strongest defense was presented and no prejudice could have … Somehow we know that that couldn't have accounted for the injuries. We might know if we saw the doctor's testimony. Your Honor … If the doctor testified to what you just said, that would be critical. But all we have so far is the state court saying that it could have happened the way the witness says, the way the victim says. It could not happen from a mere fall to the floor. That's not the critical question. The critical question is, could it have happened the way the missing witness says? And you say no, it couldn't have accounted for all those injuries. Your Honor, just common sense would dictate that one fall would not lead to the massive amounts of injuries to this person's face that were suffered. It was almost as if she had been in a car wreck, Your Honor. One fall might have injured a part of her face, but she would not have had her entire head bashed in, practically, by one fall. And, you know, in fact, it's quite noteworthy that none of this new evidence is anything to do with any medical testimony. There is no controversy in medical testimony. So, yes, Your Honor … But we don't know. You see, that's the problem. No. It may be. As I said, it may be that the medical testimony will answer this once we see it. Well, Your Honor, it is clear from not only what is in the excerpts of record, as well as the fact that the prosecutor put this guy on, and nobody controverted what he had to say, that his testimony was supporting. And, in fact, he did testify, and I do remember this, that his testimony was exactly this, that the victim's description of how she was injured and attacked was consistent with the injuries that he treated in the ER that night. That is a direct quote. And, you know, these injuries, Your Honor, you know, all this talk about the injury to the eye is ignoring the fact that this woman, her whole face was bruised, her nose was cut open requiring sutures, and, yes, the worst of the injuries was that her eyeball was kicked in and shattered to pieces, but that wasn't the only injury. Wasn't she kicked all over her body? Well, the doctor didn't treat those injuries. But that's according to her testimony. No, Your Honor. Actually, her testimony was the first injury was he ran up behind her after they had argued in some drunken way, ran up behind her and kicked her in the leg, causing her to fall down. And possibly injured her knee, but nothing that was treated in the ER. But as she fell... He didn't have to show that everything was treated in the ER to have been beat up. No, of course, Your Honor, no. Well, of course, Your Honor, there's no dispute that this victim was seriously beaten up, but the worst of the injuries were the ones to the face. Thank you, Your Honor. I do have the testimony, and I will copy it and provide it to the court after oral argument this morning. And I'd ask the courts to look specifically at page 133, which is where the doctor said that the eye injury could have occurred by falling on a corner of a table, a protruding bumper, or a large rock. Who asked him that? I'm sorry? Who asked him that? Defense counsel. Does that mean he may have talked to Darapath? Did Darapath say in Darapath's declaration nobody ever talked to Darapath? Yes, he did. And that's on page 59 of the excerpt of record that he was not contacted previously by any attorney or any investigator. Can I table things that are very coincidental? I'm sorry? Can I table testimony that's sort of coincidental? Yeah. If you believe Darapath. The problem is that Darapath also impeaches the idea that she got all these injuries in the fight. Well. Darapath says I saw her after the fight and she didn't have these injuries. On the face. And there are both the other witnesses testify that there was an altercation at the bar and that the complaining witness was involved in that altercation. Yeah, but Darapath says that's not where she was injured in her face. In her face, right. But it explains other injuries to her body. But those weren't treated at the ER. So they wouldn't be subject to medical testimony. Right, but the jury heard about other injuries to her, and this is an explanation of how those injuries occurred not at the hands of Mr. Pisa. Did you ask for an evidentiary hearing in the district court? Well, I was appointed on an appeal, and I don't think there was an evidentiary hearing requested. So nobody hauled in the lawyer or tried to do anything in terms of augmenting the record in an evidentiary sense? No, Your Honor. Okay. Thank you. Just can I say one final thing is that the prosecutor at trial precluded defense counsel from arguing that the blood alcohol level was 0.19 because there wasn't evidence in the record for that, because it wasn't called. Thank you, Your Honor. The case just argued will be submitted. The next case for argument is Reynoso v. Giordano. I'm fine. I'm fine. Yeah, I'm fine.
judges: Reinhardt, Trott, Wardlaw